## WELBORN v. TOWNSEND.

1. A will executed prior to the act of 1858 (12 *Stat.*, 700), will be applied to after acquired lands, where the testator died after that act, if the terms of the will are sufficiently comprehensive to embrace all the lands of which he died seized.

2. A will executed in 1847 by a testator who died in 1869, provided in its last clause as follows : "All the balance of my personal estate I give and bequeath unto A and B to be absolutely theirs equally divided also my land or real estate I do give will and bequeath to A and B to be theirs absolutely as above mentioned." At the time of making his will, testator owned a tract of land and afterwards purchased others, of all which he died seized. *Held*, that this was a residuary clause and under the act of 1858, A and B were devisees of the after acquired land as well as of that which testator owned when he made his will.

3. It is not the policy of the law to declare a partial intestacy, if the will can be so construed as to prevent it.

Before WITHERSPOON, J., Greenville, October, 1888.

This was an action for partition, of the tracts of land called Nos. 1, 2, 3, and 4, the plaintiffs claiming to be some of the heirs

at law of Lemuel J. Waddill, and that he died intestate as to these lands. The defendants were the heirs and vendees of Eliz. T. Waddill and Rhoda H. Waddill. The opinion states the case.

*Messrs. Cothran & Ansel,* for appellants.

*Messrs. W. L. Wait* and *W. D. Mayfield,* contra.

October 16, 1889. The opinion of the court was delivered by

Mr. Justice McGowan. Lemuel J. Waddill died in 1869, without leaving a widow or lineal descendants, seized and possessed of several tracts of land, which for convenience may be designated as the home place, containing 458 acres, more or less, and the small tracts described in the complaint as No. 1, No. 2, No. 3, and No. 4. The deceased left a will executed as far back as the year 1847 (before the act of 1858), which was duly admitted to probate. At the time the will was executed, the testator owned only the home place (458 acres), but he acquired the other tracts numbered above *after* his will was executed; and the single question in the case is whether the terms of the will executed in 1847 carried and conveyed the subsequently acquired lands to the devisees named, or the same were undisposed of and distributable among the testator's next of kin as his intestate property.

The Circuit Judge decreed as follows : "After providing for the comfortable support and maintenance of his father and mother for life out of his personal estate and lands, and after certain specific legacies to his sisters, Sarah Evans, Nancy Welborn, Mary B. Townsend, and to his nephew, Lemuel J. Townsend, the testator concluded his will as follows: 'All the balance of my personal estate I give and bequeath unto my sister Elizabeth T. Waddill and Rhoda H. Waddill to be absolutely theirs, equally divided; also my land or real estate I do give, will, and bequeath to my sisters, Elizabeth T. Waddill and Rhoda H. Waddill, to be theirs absolutely as above mentioned.' This is in the nature of a residuary clause, and the words, 'all the balance of my personal estate, * * * also my land or real estate,' are comprehensive terms which seem to be as applicable to the real estate acquired by testator after the execution of his will, as to that

owned at the time of the execution of said will. Considering
the whole of testator's will, and especially in view of the latter
clause thereof above quoted, I conclude as matter of law, that the
real estate referred to in the complaint passed under the will of
Lemuel J. Waddill, and that said estate is not subject to partition
among the heirs at law of said Lemuel J. Waddill," &c., and dis-
missed the complaint.

From this decree the appeal comes to this court upon the fol-
lowing exceptions:

"I. Because the Circuit Judge erred in holding that the gen-
eral and comprehensive terms employed by the testator to ex-
press his intention, are sufficient to cover all the property of
which the testator died seized and possessed; whereas he should
have decreed that there being no residuary clause in the will,
and no words therein, which showed an intention on part of the
testator to dispose of his after acquired real estate, that as to that
he died intestate.

"II. Because the Circuit Judge erred in his conclusions of
law, that the real estate referred to in the complaint, passed under
the will of Lemuel J. Waddill, and that said real estate is not
subject to partition among the heirs at law of Lemuel J. Waddill
from the whole of the testator's will and especially the latter
clause; whereas he should have decreed and held as matter of
law, that there were no words in the will showing an intention
to dispose of any after acquired real estate, and the will having
been made in 1847, before the act of 1858 was passed, that the
land was subject to partition among the heirs at law of Lemuel J.
Waddill, and he died intestate as to that.

"III. Because his honor, having stated the rule to be, 'that
as far as personal estate is concerned, the repeal of the act of
1791 by the act of 1808 left the rule, as to that class of property,
the same as at common law. By that law the rule was, that sub-
sequently acquired personal property would pass under a will,
providing there were any words in the will indicating the inten-
tion of the testator to dispose of it,' and that the act of 1858 pro-
vides that real estate acquired after the making of a will shall
pass under said will in the same manner as personal estate, he
erred in not holding that, there being no words in the will in

question indicating an intention to dispose of after-acquired real estate, that the said Lemuel J. Waddill died intestate as to that, and that partition was proper.

"IV. Because his honor erred in dismissing the complaint herein, when the provision of the will of said Lemuel J. Waddill showed upon its face no words, indicating an intention to dispose of his after-acquired real estate, but only to dispose of the land he then owned, and which had been mentioned in the first part of his will, &c."

At common law, a will of personal property was ambulatory, taking effect only at the death, and, as a consequence, disposed of all such property then possessed by the testator, without the least regard to whether it was acquired before or after the execution of the will, only provided the terms of the instrument were sufficient to cover and convey such property. A devise of real estate, however, was considered in the nature of a conveyance or an appointment of a particular estate, and, therefore, it was necessary that the testator should have a legal or equitable title in the lands devised *at the time of making the will.* That, of course, prevented any after-acquired lands from passing under it (4 *Kent,* 571).

In this State there has been a constant tendency to remove this radical difference between the two kinds of property in respect to the power of disposing of them by will. In 1791 an act was passed (5 *Stat.,* 163), which provided that the common law rule as to lands should also apply to personalty. But this seems to have been unsatisfactory, and soon after, in 1808, the old rule as to the ambulatory nature of a testament of personalty was restored (5 *Stat.,* 573). And in 1858 the legislature went further, and declared "that real estate purchased or otherwise acquired after the making and publishing of last wills and testaments, shall pass by and under the same, in the same manner and to the same extent as personal estate now does, &c." (12 *Stat.,* 700); and see section 1850, *General Statutes,* which puts it in this form: "Lands and personal property, which shall be purchased or otherwise acquired by any person after the making of his or her will, shall pass thereby, and no person shall be considered as having died intestate as to the said lands and personal estate, &c."

These provisions have received construction in the case of *Scaife* v. *Thomson*, 15 S. C., 358, and *Bell* v. *Towell*, 18 S. C., 95. It has been held that a will executed in 1857 by a testator, who died in 1881, is governed by the provision of the act of 1858, as modified in the General Statutes of 1872, and therefore passes after-acquired real property—the terms of the will being sufficiently comprehensive for that purpose. See *Bell* v. *Towell, supra.*

A devise of real estate being thus placed on the same footing with a testament of personalty, it is no longer necessary, in order that a will should carry after-acquired real property, that it should show affirmatively that the testator, when he executed it, contemplated acquiring additional real estate, and expressed the particular intention that such property should, when acquired, pass under the will. But as the provisions of law above cited have made a will ambulatory in character as to realty, as well as to personalty, it is enough for that purpose, if the terms of the will, considered as speaking at the death of testator, are sufficiently broad and comprehensive to cover and convey all the lands owned by him at that time, without reference to when or how they were acquired.

As the court said in *Garrett* v. *Garrett* (2 Strob. Eq., 272), in reference to a testament of personalty before the act of 1858, declaring that after-acquired real estate shall pass by and under the will "*in the same manner and to the same extent as personal estate now does" :* "The testatrix in general terms bequeathed *all her property, &c.,* and the will contained no indication of an intention on her part to detract from its ambulatory capacity. *Held,* that all the personal property of which she died possessed passed under the will, although a part of it only had been specified therein. The general rule is, that testaments take effect, or, as it is sometimes expressed, *speak at the death of the testator, and are to be applied to his personal estate as it exists at that time," &c.* The same rule is now applicable to realty.

There is nothing in the will before us which indicates an intention to detract from its ambulatory capacity. The property given was not specifically described, and in that way identified, as the property meant; but, on the contrary, is spoken of in *general*

*terms* as applicable to property acquired after the execution of the will, as to that owned by the testator at that time. The words, "All the balance of my personal estate, I give and bequeath unto my sisters [naming them], to be absolutely theirs, equally divided; *also my land or real estate I do give will and bequeath to my sisters to be theirs absolutely, as above mentioned, &c.,*" considered as spoken at the death, are as applicable to lands acquired after the execution of the will, as to that which he owned at the time—"*my lands*" embraces equally both classes.

We agree with the Circuit Judge, that the disposition of the lands ("*my lands*") followed immediately and *was connected* with that of "*all the balance of my personal estate,*" and was "in the nature a residuary clause." It is obvious that the testator did not mean to die intestate as to any part of his property. Where there is a will, the policy of the law is not in favor of declaring a partial intestacy, unless the reasons for such result are clear and indisputable.

The judgment of this court is, that the judgment of the Circuit Court be affirmed.